Case number 15-5330, Segerdahl Graphics, Inc. et al., Appellants v. United States Postal Service. Mr. Levy for the appellants. Mr. Fassenroth for the appellant. Mr. Levy, please, for a minute, we thought you were going to mail in your argument. I apologize. I saw this once happen to a counsel. I vowed never when I argued before the court would I walk in on it. No problem. Please proceed. May it please the Court, I'm David Levy, arguing for the mailer of petitioners. With the Court's leave, I'd like to reserve two minutes for rebuttal. The issue in this case is whether the Postal Service has satisfied the reasons of decision-making standard of our and Seminole Rock when it held that my clients' hold-itself mailers were not sealed at the top and the bottom, according to a 2009 sealing rule. We believe that the Postal Service misapplied its own rule. This case, though, comes in a sort of odd procedural posture because the final agency decisions gave one rationale or interpretation for applying the rule. During the district court litigation, the Postal Service counsel repudiated that interpretation and, in our view, offered four new post hoc rationalizations. And we believe that under Chenery, those can't be considered. And even if they could be attributed to the final agency decision-maker itself rather than appellate counsel, that none of them are sufficiently rational to survive even deferential our or Seminole Rock review. Perhaps the best way to explain the five different theories is with an actual mail piece. This is the Sears baby event mail. It is photocopied in color on pages 428 and 429 of the joint appendix. And both counsel for the Postal Service and I have copies. The first theory, the one that we believe appeared in the final agency decisions, was that this mail piece, which has a fold on the leading edge, which I'm touching with my right hand, and a bunch of glue between the flies of paper of the trailing edge, which I'm touching with my right hand, that on the Postal Service's theory, the piece wasn't sealed because it didn't have a seal in the midpoint of the top and bottom edges. Well, their final decision referenced an earlier investigation about midpoint, but they didn't focus on midpoint. They said it had to be on the leading edge, top and bottom. They were pretty clear that that was what the decision was, and that's what the district court understood, and that was the argument presented in our district court. Leading edge, top and bottom. There is a reference in the earlier investigation of a center. That's not what the agency decision and the rest of it. Well, I respectfully defer. The only explanation, the issue that needed to be resolved was what was sealed, the word sealed at the top and bottom. And the only theory or rationale they gave in the three decisions for what the word sealed on, on the top and bottom was by favorable reference or proving reference to the investigative decision report, which they basically rubber stamped. There was no other explanation offered in the final agency for decisions. For example, look at JA-126, which is one of the final decisions. As Judge Edwards points out, in the third paragraph, you're right, there's a reference to the center of each edge. But the work is being done three paragraphs down, where it says the standards provide that the trailing edge and other open edges must be secured. And then the last clause says the placement of the glue lines near the trailing edge did not serve to secure the top and bottom open edges. So that's the gravamen of their rationale. And that's the decision we were doing, and it's the same thing that was before the district court. But it doesn't say why that was not considered a seal. I see that sentence. Because there's no seal at the top and the bottom. But that begs the question of what is a seal of? The fact that you think that the side came within an inch or whatever it was of the top doesn't mean that it sealed the top and bottom, and they're saying it didn't. And they have pictures that seem to be pretty clear that what they're saying here is unsurprising. It's not about center of the top. It's about top, bottom, and side. And indeed, the domestic mailing manual, which is more important, I would think, for your purposes, about whether you had a reasonable opportunity to understand what the regulations were, explains it. Where it's seven inches or more opening, there has to be additional sealing. The trailing edge is not enough. I mean, it seems absolutely clear in the resolution of the decision the trailing edge alone is not enough. I mean, there's no way to avoid that. Let me take that one at a time. The first point, which I think I take to be Judge Edwards' point, is to read this decision as saying that the trailing edge glue didn't seal the top and bottom edges because it didn't exactly reach the top and bottom edges. It only approached them. The problem with that rationale, which was one of the rationales that the Postal Service advocated in its briefs to the district court, was they abandoned that argument in their reply brief to the district court. And I'm quoting from Page. But, counsel, what we're reviewing is the agency decision. The agency decision, as Judge Trinovason just read to you, is pretty clear. But the rationale is, quite frankly, in these kinds of cases, typically it really wouldn't much matter what the district court said if the review is of the agency decision. I don't think there's anything that the district court said that's inconsistent with that. But we're reviewing the agency's decision. Their first shot is at the district court, and then it comes to us. And we're looking to see whether or not their ultimate judgment is supported, explained in their decision, and consistent with their rules. And it sure looks like it. Maybe I misspoke. The argument being made here is that the piece wasn't sealed on the top and bottom because the glue didn't reach all the way to the top and bottom but only approached it. That is the plausible reading of the language on Page 126 of the Joint Dependent's section. I don't think it's just that. I mean, the way I read both the decision and the unveiling regulation is that the open edge has to be secured with at least one tab or glue line. The number of seals overall is determined by the final trim size. If it's more than seven inches, then there also has to be a seal on the top and bottom. In other words, the number has to be more than that one tab or glue line. And your situation is one of clearly longer than seven-inch open edge, and therefore it's a situation in which the number of tabs is determined by trim size more than at least one. Let me try to take a run at that, and I want to return to what I think there was a misunderstanding about the waiver the Postal Service made. The difference is if the piece were less than seven inches long, then the trailing edge could be sealed simply by a single tab on the trailing edge. Or a glue line. Or glue, but it didn't have to be a glue line. It could be a single tab that nowhere reached near the top or the bottom. Right. If it's seven inches or longer, then it has to be sealed on the top and the bottom. But they also talk about the number of seals, and they count. I mean, I understand that it could have been done differently, but they count the glue line on the trailing edge as one seal. And then they talk about the need for multiple seals, and give an example of a mailer that has a final fold on the leading edge and then has the trailing edge. They have to have at least one tab or glue line. And then there may be more required in other situations, such as longer edge. I think, Judge Pillard, you've misread the critical word in the quote. It doesn't say the number of seals. It says the number of tabs required is determined by the final trim size. Glue is not a tab. It's a substitute for a tab. And what that would mean is if we were talking about tabs rather than glue, if the piece was more than seven inches long, then you couldn't have just one tab. You would have to have two or more tabs to make sure that you sealed not only the tops and bottom, but also as well as the end. But we're not in the tab zone. We're in the glue zone. And so I don't think that sentence is dispositive. It simply says, the next sentence, if the piece is seven inches long or more, the piece must be sealed at the top and the bottom. It doesn't define what sealed is. And our view is that this configuration on this piece sealed the top and bottom because it prevented it from opening and processing. The term sealed isn't self-defined in the rule. And in our view, the run of the glue on the trailing edge effectively seals the top as well. I want to respond to something Judge Edwards asked about before he gets away from me, which is I wasn't talking about what the district court said. The quotation that I was making was from the Postal Service of Counsel, which abandoned this line of argument and said that plainly the final agency decisions did not conclude that the metal pieces were noncompliant because glue along the trailing edge must literally touch the top and bottom edges with no clearance allowed. They've abandoned that argument. Yeah, but that's a different argument. That's not their argument. Because I think what they're saying, it seems to me, if you just think about this geometrically, if you have a glue line along the trailing edge, that glue line can go all the way to the top and all the way to the bottom. Or it could stop short of that. But I think the way I read the decision that we're reviewing, which is the administrative decision, is I don't care what you do along the trailing edge, even if it goes all the way to the top and all the way to the bottom, the point is that the top and bottom edges have to be secured. And a glue line along the trailing edge just doesn't do that. You're right that, in theory, an agency could reach the determination that when you have a trailing edge glue line that reaches all the way to the top and goes all the way to the bottom, that does seal the top and bottom edges. That seems very hard to believe, for example, if the envelope was 80 inches wide. It's true that it would reach the top and reach the bottom, but you couldn't say that the top and bottom edges were secured. And I think the point that the Postal Service was making in the order that we're reviewing, which is on JA-126, is the glue line along the trailing edge just doesn't do it when you're talking about something that's longer than 7 inches. There has to be something at the top, something at the bottom. It doesn't necessarily have to be right in the middle. It doesn't have to be in the center, because that's a different paragraph we're talking about the way we interpret the investigative decision. But there has to be something more than just a glue line of some sort along the trailing edge. But that, Your Honor, is not based on what the decision that we're looking at actually says. What it says is... I think it is, because suppose that the decision just didn't have the third paragraph at all, and all we had was, and this is on JA-126, all we had was the sixth paragraph. It does say the placement of the glue lines near the trailing edge did not serve to secure the top and bottom open edges. But the problem is that begs the question. Let me try this from a different direction. The Postal Service conceded that the piece would have satisfied the sealing requirements if there had been a tab on the top and bottom, but off-center. So it could have been close to the trailing edge tab, which would have still left a gap between the piece for a long run on the top and the bottom. In what meaningful sense can it be said that that is sealed and this configuration in the actual piece isn't sealed? Because as long as it's not all the way over to the trailing edge, it does seal the top and bottom. I mean, we can have a debate about how far away from the center can you go. What's the zone in which you're still sealing the top and bottom edge? And I think the Postal Service's point is something beyond just the trailing edge is necessary when you're talking about a mail order of this width to get the top and the bottom. But the problem with that is it begs the question of what is sealed, the top and bottom edge. And there is nothing in the DMM rule that they're relying on, which they quote verbatim in paragraph 5 and then paraphrase again in paragraph 6. There is nothing in that rule that says that for a piece to be sealed on the top and bottom edges, it has to have a tab or glue on the top and bottom edges. If it's sealed somewhere else, it effectively keeps the piece shut in processing. I think that's just the natural understanding of something that has more than one edge. I mean, the point is by everybody's description, there's a glue line along the trailing edge. That's just not a glue line along the top edge because it's the trailing edge. So whenever you have something, I think this is what Judge Pillard was getting to earlier, whenever you have a presupposition that there's both a trailing edge and a top edge and they both need to be sealed, the idea is that a glue line along the trailing edge doesn't do the sealing at the top. Something else has to happen. How close it has to be to the center of that, there's room for debate on that, but just the glue line along the trailing edge doesn't do anything with the top and bottom. Well, the problem is there's a corner, and if there's glue in or near the corner, then it seals both edges, the top, the bottom, and the trailing. Okay. Thank you. Good afternoon. May it please the Court, Peter Fafnorth for the Postal Service. As I think the Court appreciates, the rules here are quite clear. They're clear, and if there were any ambiguity under our deference, the interpretation of the Postal Service should be credited. What about Mr. Levy's argument that it wasn't as clear as you suggest because in subsection C, the reference to more than one seal is specific to tabs, whereas the preceding sentence talks about a tab or a glue line. So the implication he's saying is that the left edge and other open edges must be secured with at least one tab or a glue line, and then he's reading it implicitly to say when you're using tabs, the number of tabs required is determined by the final trim size. I understand. And is that maybe the best reading? I'm not sure that's the best reading, but in any event, I think the fourth sentence overcomes that because I read this entire paragraph of the regulation as going from more general to more specific. So as a general matter, the left edge always needs to be sealed, and implicitly by the time you get down to the fourth sentence, you infer, I think quite reasonably, as the Postal Service has concluded through its interpretation, that pieces that are under 7 inches in length are not deemed to have an open edge on the top and the bottom where the left edge is appropriately sealed. But then the next sentence, the number of tabs required is determined by the final trim size and paper basis weight of the piece. That is saying yes. You know, every circumstance is different. What page are you on? I'm looking at the actual D.A.M. 201.3.14.1c, which is cited on page 6 of our brief, but it obviously appears throughout the proceeding here. But he's saying you start with general. Yes. Other open edges must be secured with at least one tab or glue line, and then you get into particular as in the situation of tabs. Right. So that's the way he's reading it. The number of tabs required is determined by the final trim size. It's 7 inches long. It has to be sealed on the top and the bottom. And then, you know, you can use more than that if you want. Exactly. Any ambiguity, please add more. And the whole point here is to have appropriate sealing. And if you go way back to 1990 when the Postal Service was putting out proposed rules for folded self-mailers, and this is in the addendum to our brief at page 27, this is 55 Fed Reg 40561. You know, it makes clear that self-mailers prepared from folded single sheets and booklet-type mail pieces that are open on three sides cannot be successfully processed on the current automation equipment. And as these regulations were refined and both sides recognized that there is continuing engineering testing and it's a very cooperative process with mailers. This is, for the most part, not an antagonistic relationship between the mailing community and the Postal Service. This case is an exception. The Postal Service really is trying to work cooperatively to allow mailers to mail more. That's in the Postal Service's interest. But they also are very interested in making sure that their machines don't get gummed up by pieces that cannot process through efficiently. I think they should just all switch to robocalling. That would be, you know, a different approach. I mean, one way to think about it is this. Even if you're in the zone of tabs, if you have the trailing edge secured by tabs and you put tabs all the way up and down the trailing edge, so you saturate the trailing edge with tabs, have you sealed the top or bottom edges? You haven't. I think that the way this reads is you've got to seal more than the trailing edge. You've got to seal other edges, too. So the facsimile of a glue line that goes all the way up and down is tabs that go all the way up and down. You'd still think that you need tabs on the top and the bottom. The number of those tabs would depend on various things. But you need some tab at the top and the bottom. You mentioned the – I didn't mean to cut off your ability to answer that. You were nodding your head. But just for the record, you were saying yes. Okay. You were saying this is a cooperative relationship. I wonder if – you know, this is expensive mailing, and it's a big risk on a company that is trying to send out a lot of mailing. How quickly can you pre-approve a mailer that they may want to send to many, many – My understanding is it's a pretty efficient process. I mean, they have these design mail consultants who are available. I should ask agency counsel. She has an estimate as to exactly how many days that takes. But my understanding is that it is an expeditious process. Now, it does seem – or maybe you dispute this, but it struck me looking at the record that there was some mix-up of investigations or investigative memoranda, cross-referring to different mailing. Is that not the case? Meaning that there were additional mailings that were – That some of the opinions seem to be referring actually to other mailers than the ones that were actually at issue, some of the investigation reports. There's a little bit of copy and paste. I think there was a little bit of copy and paste. There's a glitch in – I think it was the GM decision where it says AARP, I think, in one of the final paragraphs. If you look back at some of the investigative memoranda, I think that AARP was one of the various – there were about half a dozen different mailers that were at issue, and I frankly don't know what became of the AARP proceeding. They obviously have not become part of this litigation. But, you know, obviously between these various final agency decisions, all of which presented the same issue, there is some copy and paste that occurred. But that doesn't mean that the decisions did not look at the facts appropriately and come to reasoned decisions. You talk about reasoned decisions, but, you know, at some level, if you look at JA-126, which we were referencing before, is there reasoning there or is it just a repetition of the standard? Must include the top and bottom open edges if the mail piece is over 7 inches in length. The placement of the glue lines near the trailing edge did not serve to secure the top and bottom open edges. Is there reasoning added to that other than just regurgitating the regulatory standard? I'm just thinking in terms of, you know, our role as a court and what are we deferring to. Well, you're deferring to the Postal Service's expertise in knowing whether a specific mail piece that it is evaluating complies with its regulations. I mean, these are – this is its job. Its job is to see does this piece of mail comport with the mail class in which it was sent back. You're just saying the regulation is self-evident. I mean, the job of the agency is to say, on these facts, the self-evident principle has been violated and we don't have anything more to say. That's right. And, I mean, I think it's an old decision, and obviously there have been a lot of legal developments in the intervening century, but the Supreme Court in the Bates & Guild v. Payne decision in 1904 basically said, we don't want courts to get into the job of micromanaging the Postal Department's mail classification decisions. And so, therefore, its findings of fact are conclusive, and it likewise applied an extremely deferential standard to the mixed questions of law and fact rendered by the Postal Department. Thank you, Your Honors. If there are no further questions, I would ask that the decision be affirmed. Thank you, Counsel. Mr. Levy, we'll give you back one minute. I'd just respond to the three things that were raised. The issue of getting pre-approval wouldn't be an issue now because in 2011, as we explained in our brief, the commission, as a result of proceedings that were going on, approved this kind of design without separate seals on the top. Second of all, the question of whether the Postal Service's dealings with the mailers were cooperative. They generally were. The headquarters were. That's the result of the rulemaking. These cases originated in one Chicago district office, which was contrary to the advice that we are told the mailing industry and the printing industry had received from headquarters, which is why we're here. There were a whole cluster of cases that were issued by this one Chicago office at the same time. The rest of them were either settled or were dropped by the Postal Service, which is why we only have the three that are left here. Judge Pillard's comment about no reasoning is the point I'm trying to make, obviously not very successfully. You have a quotation in the decision from the DMM rule. You have a parodying or a paraphrase of a rule, and then you have an ipse dexit that the rule wasn't satisfied. But what you don't have is an explanation of what is the theory of seal that makes this unsealed. Does it mean that there has to be glue touching the top? Well, they admitted in their brief that they weren't claiming that. Does it mean that the glue has to be set inboard in the middle of a piece? No, they said that's not their position. So we're left with a theory of interpretation under which the designs that they say would pass muster flunk as well because they say you could have a seal at the top and bottom just set in fractionally from the edge and that would pass muster. So it isn't reasoned. And the counsel's comment that the Postal Service's expertise should be deferred to would be valid if the expertise were expressed in a coherent and rational fashion. But if it's only appearing in the briefs of counsel or it's a conclusory exit, then we don't think that even the deferential standard review saves it. There are no questions. That's all. Thank you. Thank you, counsel. The case is submitted.
judges: Srinivasan, Pillard, Edwards